NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MATTHEW SCHOENSTEIN, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 13-6803 (JAP) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| RICHARD E. CONSTABLE, III, | : | |
| COMMISSIONER, in his official capacity as | : | |
| Commissioner of the NEW JERSEY | : | |
| DEPARTMENT OF COMMUNITY AFFAIRS, | : | |
| an agency of the State of New Jersey, | : | |
| | : | |
| Defendant. | : | |

PISANO, District Judge.

The Plaintiffs in this matter are a not for profit corporation and its subsidiary, which operate a group home for men in recovery from alcohol and substance abuse, as well as a current and prior resident of the group home, and the guarantor of the mortgage of the property where the group home stands. They seek an injunction from this Court preventing the New Jersey Department of Community Affairs ("DCA") from interfering with their use of the group home, which is located in Somers Point, New Jersey. Plaintiffs filed this complaint after the owner of the group home, Hansen House, LLC, and the operator of the group home, the Hansen Foundation, Inc. ("Hansen Foundation"), were fined by the DCA for illegally operating an unlicensed boarding house (together, the "Hansen Entities"). The Hansen Entities were advised to obtain a license or conform to the "Oxford House" model, but Plaintiffs instead requested that the DCA issue a waiver from that requirement. After an Office of Administrative Law hearing, but before an initial decision was issued, Plaintiffs brought this suit, alleging that the DCA's

enforcement action violates federal and state law.  Before the Court is a motion to dismiss
brought by the State Defendant Richard E. Constable, III, named only in his official capacity as
Commissioner of the New Jersey Department of Community Affairs ("Defendant" or the
"DCA").  Plaintiffs oppose this motion.  The Court heard oral argument on this matter on
November 19, 2014.  For the reasons set forth below, the Court denies in part and grants in part
Defendant's motion.

## I.      Background

The following allegations are summarized from the Complaint, and must be taken as true
in deciding this Motion to Dismiss.[1]

The Hansen Foundation is a nonprofit organization, whose main purpose is to help
recovering alcoholics and substance abusers.  The Hansen Foundation founded Hansen House,
LLC (the "LLC"), which owns two "Hansen Houses," which are state-licensed facilities that
provide substance abuse treatment.  The Hansen Houses are inpatient residential treatment
facilities, and are often referred to as "halfway houses."  Residents of the Hansen Houses are
referred from jail and other substance abuse treatment programs, and typically live at the facility
for a period of three to six months.  The Hansen House helps its residents find jobs, and provides
transportation to and from work.  Except for when they are at work, the residents are supervised
by the Hansen House.  The Hansen House transports the residents to 12-step meetings, and there
is on-site substance abuse treatment with licensed substance abuse counselors and a clinical
director.  Plaintiffs allege that when residents of the Hansen House facilities complete treatment,
they go on to live at Oxford House, or some other living arrangement, depending on individual

---

[1] *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) ("We accept all factual allegations as true, construe the
amended complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable
reading of the…complaint, he may be entitled to relief.").

circumstances.  Some of the residents will go on to become residents of the Randy Scarborough Serenity House (the "Serenity House").

The Serenity House is owned by the LLC, and is located at 6 Braddock Road, Somers Point, New Jersey.  It first opened in October 2011.  The Serenity House is in a duplex being used as a single family dwelling.  It has no live-in staff or counselors, but is supervised by two employees of the LLC.  Residents of the Serenity House are referred from substance abuse treatment facilities, drug courts, jails, or anyone seeking a recovery residence.  The Serenity House does not accept payments from the referral sources to take residents, nor does it take accept payment for rent on behalf of the residents.  The residents of the Serenity House are drug tested, and the results are reported to the New Jersey Department of Probation and Parole if it is a condition of the resident's residency at Serenity House.  Residents of the Serenity House are required to be employed, engaged in community service, or enrolled in school.  Many residents have criminal histories that hamper their ability to find employment.  Residents sign a contract at the Serenity House, which requires the payment of rent and a security deposit.  The contract also requires that the resident remain clean and sober, undergo drug testing, follow a curfew, and puts a limitation on the number of guest visits. The contract also requires residents to attend a weekly house meeting and attend at least four meetings a week at 12-step programs.  Individual rent is paid by each resident on a weekly basis to the LLC.  The LLC pays all the house utilities and bills.  Plaintiffs allege that the residents of the Serenity House live as a family because they eat together, shop together, and provide certain emotional support to each other.

On February 14, 2012, the DCA began investigating a complaint alleging that the Serenity House had been operating illegally since October 20011 as an unlicensed rooming or boarding house.  The DCA determined that the residence was a boarding house as defined by

N.J. Stat. Ann. § 55:13B-3(a),[2] and was operating without a license in violation of N.J. Stat. Ann. § 55:13B-7a(1).[3]  Angelo Mureo, the DCA investigator, informed Jennifer Hansen, the Serenity House President, that the Serenity House must either become licensed or comply with the "Oxford House" model.  The Oxford House model was created as an exception to the rooming/boarding house licensing requirement, and generally consists of four criteria to distinguish it from a rooming/boarding house:  (1) the residents lease the entire premises from the landlord and are jointly and severally liable for the rent and utilities; (2) all of the expenses, including rent and utilities for the premises, are paid from a single checking account rather than individually; (3) there are no personal or financial services to the residents by the owner or Oxford House, Inc.; and (4) in the event one resident leaves the premises, it is the residents who decide who will fill the vacancy.  Sobriety houses with these same attributes do not require a license because they are considered to be single-family households under the Rooming and Boarding House Act (the "Act"), N. J. Stat. Ann. §§ 55:13B-1 *et seq.*  The Serenity House did not qualify as an Oxford House because it was owned by the LLC, which held individual contracts with the residents and paid expenses, and because the residents paid rent to the LLC from their personal bank accounts, were supervised by two LLC members, and do not select house members.

Ms. Hansen then requested a waiver as a reasonable accommodation under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601 *eq seq.*, but was instead advised by the DCA that the Serenity House must obtain a license or modify its program to fit the Oxford House model.  On

---

[2] A boarding house is any building which "contains two or more units of dwelling space arranged or intended for single room occupancy, . . . and wherein personal or financial services are provided to the residents, . . . but excluding . . . any owner-occupied, one-family residential dwelling made available for occupancy by not more than six guests, where the primary purpose of the occupancy is to provide charitable assistance to the guests and where the owner derives no income from the occupancy."  N.J. Stat. Ann. § 55:13B-3(a).
[3] "No person shall own or operate a rooming or boarding house . . . without a valid license to own or operate such a facility . . . ."  N.J. Stat. Ann. § 55:13B-7a(1).

March 9, 2012, the DCA issued separate violation notices to the LLC and the Hansen Foundation for violating N.J. Stat. Ann. § 55:13B-7a(1).  By letter dated March 26, 2012, counsel for the Hansen Foundation requested that the DCA treat the Serenity House in the same manner as it treats Oxford House, and waive the imposition of the requirements for rooming and boarding houses in the same manner as it does for the Oxford House.  Upon receipt of this letter, the DCA transmitted the matter to the Office of Administrative Law ("OAL") as a contested matter.  On March 29, 2012, the LLC and the Hansen Foundation appealed the DCA's decision.  In a letter dated August 8, 2012, the DCA denied a July 25, 2012 request by the LLC and the Hansen Foundation for a waiver to the licensing requirement of the Act.

An OAL hearing was held on August 22, 2012, December 5, 2012, March 13, 2012, and April 17, 2013.  On November 8, 2013, Plaintiffs initiated this matter by filing a three-count Complaint.  On December 20, 2013, the Administrative Law Judge (the "ALJ") issued an initial decision affirming the DCA's determination.  The DCA's final agency decision is pending.  On January 21, 2014, the DCA filed a motion to dismiss.  On February 10, 2014, Plaintiffs[4] filed a six-count Amended Complaint.  Plaintiffs allege, *inter alia*, that the DCA is denying and otherwise making housing unavailable to Plaintiffs because of their disability[5] and that the DCA is treating the residents of the Serenity House in a discriminatory fashion by imposing "far more stringent fire, zoning, building, property maintenance and land use requirements on this group of unrelated disabled individuals living together than it imposes upon individuals living together who are related by blood or marriage or other grounds of unrelated disabled persons."  Am. Compl. ¶ 102, *see also* Am. Compl. ¶¶ 100–104, 111.

---

[4] Ole Hansen & Sons, Inc., the mortgage guarantor for the property on which the Serenity House stands, was not a party in the first Complaint.
[5] Plaintiffs assert that the Plaintiff-residents are "handicapped" within the meaning of the FHA and the ADA as recovering alcoholics and substance abusers.

Currently, the Plaintiffs are current Serenity House resident Matthew Schoenstein; former resident Russell Muldowney; the Foundation; the LLC; and Ole Hansen & Sons, Inc. ("Hansen & Sons").  As mentioned, the State Defendant, named in his official capacity only, is DCA Commissioner Richard E. Constable III, who is vested with the authority to enforce the Act under N.J. Stat. Ann. 55:13B-4(f).  Plaintiffs are primarily seeking declaratory and injunctive relief, and allege violations of the FHA, the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 701 *et seq.*, the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:6-1 *et seq.*, and the New Jersey Administrative Procedures Act ("NJAPA"), N.J. Stat. Ann. 52:14B-1 *et seq.*

## II.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).

In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).  When assessing the

sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Any legal conclusions are "not entitled to the assumption of truth" by a reviewing court.  *Id.* at 679. Rather, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.  See also Fowler*, 578 F.3d at 210 (explaining that a proper complaint "must do more than allege a plaintiff's entitlement to relief").

Generally, a district court may not consider matters extraneous to the complaint when determining a Rule 12(b)(6) motion to dismiss.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  This means that the district court relies on "the complaint, attached exhibits, and matters of public record."  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  A district court may, however, appropriately consider "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

## III.   Discussion

### A.   *Abstention*

In its motion to dismiss, the DCA argues that this Court should abstain from hearing this matter under either the *Burford* or *Younger* abstention doctrine.  The Court notes that abstention "is the exception, not the rule."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976).  Abstention

> is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Id.* (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)).

Because abstention results in a district court declining to exercise or postponing the exercise of

its jurisdiction, the issue of abstention must be determined first.

          1.      Abstention under *Burford*

The Supreme Court has characterized *Burford* abstention, an extension of *Burford v. Sun*

*Oil Co.*, 319 U.S. 315 (1943), as appropriate where "exercise of federal review of the question in

a case and in similar cases would be disruptive of state efforts to establish a coherent policy with

respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814.

Determining whether *Burford* abstention is appropriate requires a two-step analysis by the court.

*See New Orleans Public Service, Inc. v. City of New Orleans* ("*NOPSI*"), 491 U.S. 350, 361

(1989). First, the court must determine "whether timely and adequate state law review is

available." *Matusow v. Trans-County Title Agency, LLC*, 545 F.3d 241, 247 (3d Cir. 2008). If

such adequate review exists, the court

> must decline to interfere with the proceedings or orders of state administrative
> agencies: (1) when there are "difficult questions of state law bearing on policy
> problems of substantial public import whose importance transcends the result in
> the case then at bar"; or (2) where the "exercise of federal review of the question
> in a case and in similar cases would be disruptive of state efforts to establish a
> coherent policy with respect to a matter of substantial public concern."

*NOPSI*, 491 U.S. at 361 (quoting *Colorado River*, 424 U.S. at 814). While the doctrine has

evolved over the years, the Supreme Court has made clear in more recent decisions that a narrow

interpretation of *Burford* abstention is appropriate. For example, in *Zablocki v. Redhail*, the

Court declared that "there is, of course, no doctrine requiring abstention merely because

resolution of a federal question may result in overturning a state policy." 434 U.S. 374, 379 n.5

(1978) (citation omitted). Because both parties agree that "timely and adequate state law

review" is available, the Court turns to the issue of whether it must decline to exercise jurisdiction under either prong of *Burford*.

Generally, the DCA argues that the Court should abstain because "[f]ederal intervention would disrupt State efforts to establish and maintain" the regulation of rooming and boarding houses, and "New Jersey courts are in the best position to consider the validity and implementation of these regulations and policies." Def.'s Br. at 17. This argument, however, misses the mark. The essence of Plaintiffs' argument is that the DCA's refusal to accommodate Plaintiffs in their housing violates the FHA, as well as other federal and state antidiscrimination statutes. Plaintiffs make clear that they are not contesting the validity or interpretation of the Act, but rather the application of the Act as it pertains to them. *See* Pls.' Opp. Br. at 23; *see also Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 748 (3d Cir. 1982) (finding that *Burford* abstention inapplicable because "[t]he policies embodied in the Municipalities Planning Code are not being attacked—it is rather the application of those policies by a single township that is at issue"); *Oxford House-Evergreen v. City of Plainfield*, 769 F. Supp. 1329 (D.N.J. 1991) (holding that *Burford* abstention was not appropriate where the issue was whether a township's refusal to modify the term "family" as it applies to the plaintiffs violated the FHA). In other words, they argue that the FHA requires that the DCA to create a reasonable accommodation to Plaintiffs by expanding its interpretation of "single-family" to include the Serenity House. Despite the DCA's objections, a determination of whether the DCA was motivated by discriminatory considerations would not disrupt the State's legitimate efforts in establishing its boarding and rooming house regulations. *See, e.g.*, *Heritage Farms*, 671 F.2d at 748 (explaining how *Burford* abstention did not apply where plaintiffs claimed a violation of their constitutional rights under § 1983 because

the regulation "simply does not address such behavior"); *see also Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997).

In cases like this, where the heart of Plaintiffs' claims involves federal issues, the justification for abstention is raised.  *See Colorado River*, 424 U.S. at 814 n.21.  While the DCA argues that the regulations involved here are complex, the regulatory scheme here does not approach the complexity of the one under scrutiny in *Burford*, which "involved a complex system of land and natural resources management designed to balance private property rights, state revenues, market demand, the economically efficient extraction of oil and gas, and environmental protection."  *Disability Rights N.J., Inc. v. Velez*, Civ. No. 10-3950, 2011 U.S. Dist. LEXIS 79687, at *59–60 (D.N.J. July 20, 2011).  The DCA also asserts that permitting the waiver of the licensing requirements by the Court "would have potentially far-reaching and disruptive effects."  Def.'s Br. at 16 (citing to *Izzo*, 843 F.2d at 769).  The DCA claims that if the Court allows this waiver, it would "open the door" for any group of disabled person, no matter how dissimilar to a single-family household, to circumvent the regulations.  The Court finds this concern both misplaced and overblown.  First, Plaintiffs' request to be treated as a "single-family" under the Act is similar, if not the same, request that was made by the Oxford House.  *See e.g.*, *Oxford House*, 769 F. Supp. 1329.  There has been no claim that allowing this recovery facility to avoid regulation under the Act has resulted in any and every recovery house being permitted to do the same.  Second, and significantly, the Court does not believe that claims of discrimination of handicapped individuals in violation of federal law are simply a matter of land use policy relating to boarding houses.  As the *Oxford House* Court pointed out, the FHA provides that "any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this

subchapter shall to that extent be invalid."  42 U.S.C. § 3615.  Accordingly, the Court will not

decline to hear this case under *Burford*.

2.   <u>Abstention under *Younger*</u>

The DCA also argues that the Court should abstain under the *Younger* abstention

doctrine, a principle of abstention that emphasizes the importance of federal courts refraining

from enjoining or otherwise interfering with ongoing state proceedings.  *See Younger v. Harris*,

401 U.S. 37, 43–45 (1971).  *Younger* abstention "espouse[s] a strong federal policy against

federal-court interference with pending state judicial proceedings absent extraordinary

circumstances." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431

(1982).  When determining whether abstention is appropriate under *Younger*, district courts must

determine three requirements are satisfied:  "(1) there are ongoing state proceedings that are

judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state

proceedings afford an adequate opportunity to raise the federal claims." *Addiction Specialists,*

*Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (citations and quotations omitted).

a.   Ongoing State Proceedings that are Judicial

First, the Court must determine that there are "ongoing state proceedings that are judicial

in nature."  Plaintiffs do not dispute that there are "ongoing state proceedings," and have not

offered any evidence that the DCA has taken any final action on their request.  Furthermore,

Plaintiffs have "the right to appellate review by state courts if he wishes to challenge the final

decision of the [DCA.]  Indisputably, these are judicial proceedings." *Zahl v. Harper*, 282 F.3d

204, 209 (3d. Cir. 2009) (citing N.J. Ct. R. 2:2-3(a)(3)); *see also Ex rel W.K. v. N.J. Div. of Dev.*

*Disabilities*, 974 F. Supp. 791, 794–95 (D.N.J. 1997).

11

Plaintiffs, however, do dispute that the state proceedings fall within the scope of *Younger*. The Supreme Court has clarified that abstention under *Younger* is only appropriate in three types of proceedings: "state criminal prosecutions," "civil enforcement proceedings," and "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 593 (2013) (internal quotations and citations omitted). The Supreme Court explained that "civil enforcement proceedings" to which *Younger* applies typically involve state proceedings that are "akin to a criminal prosecution in important respects." *Id.* (quotation marks omitted). These quasi-criminal actions are frequently "initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act," and "a state actor is routinely a party to the state proceeding and often initiates the action." *Id.* (citations omitted). Finally, the Court found that "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.* (citations omitted). *See also ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 138 (3d Cir. 2014) (adopting the factors set out in *Sprint* as necessary to evaluate when considering whether a state proceeding is "quasi-criminal" in nature).

Here, the state proceedings at issue constitute a civil enforcement proceeding under *Sprint*. The state proceeding was commenced by the DCA, a state agency. The DCA conducted an investigation into whether the Hansen Foundation and the LLC, two of the federal Plaintiffs, were wrongfully violating the Act after receiving a formal complaint. The investigation led to a conclusion by the DCA that the Hansen Foundation and the LLC were operating an illegal boarding house in violation of the Act. The DCA then issued violation notices and imposed sanctions. Thereafter, a formal hearing was conducted in the Office of Administrative Law, at which the parties introduced testimony and documentary evidence, and cross-examined

witnesses.  After this hearing, the Administrative Law Judge issued an Initial Decision, which the DCA will accept, reject, or modify consistent with the record.  An automatic right to appellate review of the final decision is available.  *See Zahl*, 282 F.3d at 209 (citing N.J. Ct. R. 2:2-3(a)(2)).  Accordingly, the Court finds that the state proceeding at issue here bears the hallmarks of a "quasi-criminal" action, and is satisfied that *Younger*'s first prong is satisfied.

                b.        The State Administrative Proceedings Must Implicate an Important State Interest

      Next, under the second prong of *Younger* abstention, the DCA argues that the state proceedings implicate important state interests, as the proceedings deal with the DCA's enforcement of the Act, which was enacted "to provide for the health, safety and welfare of all those who reside in rooming and boarding houses in this State."  *See* Def.'s Br. at 24 (quoting N.J. Stat. Ann. § 55:13B-2).   The mere fact that the background of a case arose out of a dispute with the DCA "is not enough to say that the federal proceeding would interfere with state proceedings that involve important state interests for *Younger* abstention purposes."  *Addiction Specialists*, 411 F.3d at 409.  As discussed above, these proceedings do not deal with the validity of the Act; rather, Plaintiffs challenge the DCA's actions in making certain determinations under the Act.  The Third Circuit had explained that a determination of whether state interest are implicated under Younger depends in large part on whether the proceeding challenges an official's actions or a state's policies; where a federal plaintiff seeks to challenge an official's actions that may infringe upon his federal rights likely does not implicate important state interests.  *See Addiction Specialists*, 411 F.3d at 409–10 ("[A] federal claim challenging the discriminatory *actions* of township officials in making land use decisions—as opposed to a claim challenging the validity of the state's land use *policies and laws*—did not implicate important state interests for *Younger* abstention purposes.") (citing *Gwynedd Props. v. Lower Gwynedd*

*Twp.*, 970 F.2d 1195, 1202–03 (3d Cir. 1992)).  Considering that the Plaintiffs here are arguing that the DCA's in enforcing the Act was motivated by discriminatory considerations in violation of the FHA, the Court finds that important state interests are not implicated for *Younger* abstention purposes.  *See Addiction Specialists*, 411 F.3d at 409.  Accordingly, because Plaintiffs' claims alleging that the DCA, through its actions, violated certain federal statutory rights do not implicate important state interests, abstention under *Younger* is not appropriate. The Court therefore will exercise jurisdiction over these claims, and will turn to the merits of Plaintiffs' Complaint.

B.     *Eleventh Amendment Immunity*

The DCA next argues that the Court lacks subject-matter jurisdiction over Plaintiffs' state law claims pursuant to the Eleventh Amendment.  It asserts that the Eleventh Amendment prohibits suits against a state by citizens of other states, as well as suits against a state or state agency by its own citizens.  *Pennhurst State Sch. v. Halderman*, 465 U.S. 89, 100 (1984). Significantly, the Supreme Court held in *Pennhurst* held that federal courts are barred by the Eleventh Amendment from enjoining state officers from violating state law.  *See* 465 U.S. at 101–02, 121 ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. . . .We now hold that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction.") (citation omitted).  Further, while federal courts may hear federal claims against state officers, they may not hear supplemental state-law claims.  *See Pennhurst,* 465 U.S. at 118–21; *see also Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985) (explaining that a state's immunity can be overcome by naming state officials as defendants in an injunctive action grounded in state law);  *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–42 (2002)

(holding that supplemental jurisdiction under 28 U.S.C. § 1367(a), like pendant jurisdiction before it, does not extend to claims against nonconsenting state defendants).

Here, Plaintiffs attempt to bring several state law claims against the Commissioner of the DCA in his official capacity.  These state law claims are clearly barred under the Eleventh Amendment, *see Pennhurst*, 465 U.S. at 121, and must be dismissed.  Accordingly, Plaintiffs' state law claims found in Counts IV through VI of Plaintiffs' Amended Complaint are dismissed with prejudice, as well as any claims of state law violations that may exist in Counts I through III.

  C. *Plaintiffs' Federal Claims*

The DCA next argues that Plaintiffs' federal claims under the FHA, ADA, and RA must be dismissed under Rule 12(b)(6) for failure to state a claim.  Due to the similarity between the FHA, ADA, and RA, "courts have concluded that the FHA[] analysis can be applied to ADA and [RA] claims as well in such cases where claims are brought under all three statutes."  *In re Lapid Ventures, LLC v. Twp. of Piscataway*, Civ. No. 10-6219, 2011 U.S. Dist. LEXIS 63973, at *14 (D.N.J. June 13, 2011) (citing *Reg'l Econ. Cmty. Action Program v. City of Middletown*, 294 F.3d 35, 45–46 (2d Cir. 2002)).  Therefore, the Court analyzes Plaintiffs' claims under the FHA to determine if they have sufficiently stated a claim.

As an initial matter, the parties agree that the FHA's protections apply to recovering alcoholics and addicts who are not currently using an illegal substance.[6]  *See Easter Seals Soc.,*

---

[6] Under the FHA, "handicap" is defined as:

 (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; or
 (2) a record of having such impairment; or
 (3) being regarded as having such impairment, but such term does not include current, illegal use of or addiction to a controlled substance. . . .

42 U.S.C. § 3602(h).

*Inc. v. N. Bergen*, 798 F. Supp. 228, 233 (D.N.J. 1992) (citing 42 U.S.C. §§ 3617, 3602(h)); *see also Sullivan*, 811 F.2d at 182 ("Case law establishes that alcoholics are handicapped within the meaning of [the RA]."). Therefore, the consideration is whether Plaintiffs have sufficiently pled facts to establish that the DCA has unlawfully discriminated against them, either by failing to make reasonable accommodations for Plaintiffs, or by intentionally discriminating against Plaintiffs or by retaliating against Plaintiffs for exercising their legal rights. *See* Pls.' Opp. Br. at 35–37.

      1.    <u>Reasonable Accommodation Claim</u>

As defined under the FAA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). While the Third Circuit has yet to articulate a clear standard for reasonable accommodation claims under the FHA, *see Bedell v. Long Reef Condo. Homeowners Ass'n*, Civil No. 2011-051, 2013 U.S. Dist. LEXIS 17203, at *17 (D.V.I. Dec. 6, 2013), district courts in this Circuit have held that a plaintiff must show the following elements in order to make out a claim for a FHA violation based on failure to provide a reasonable accommodation:

> i) that he is suffering from a disability as defined under 42 U.S.C. § 3602(h)(1); ii) that the Defendants knew or reasonably should have been expected to know of the disability; iii) that reasonable accommodation of [plaintiff's] disability might be necessary to afford him an equal opportunity to use and enjoy his dwelling; and iv) that the Defendants refused to make a reasonable accommodation.

*United States v. Port Liberte Condo 1 Ass'n.*, Civil No. 04-2783, 2006 U.S. Dist. LEXIS 70573, at *13 (D.N.J. Sept. 20, 2006) (citing *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997)). A reasonable accommodation inquiry "is highly fact-specific, requiring a case-by-case by case determination." *Hovsons, Inc. v Twp. of Brick*, 89 F.3d

1096, 1104 (3d Cir. 1996) (quoting *California Mobile Park*, 29 F.3d at 1418).  A reasonable accommodation claim operates under a burden-shifting analysis, wherein "a plaintiff must show that the requested accommodation was necessary in order for handicapped persons to have an equal opportunity to use and enjoy a dwelling" in order to establish a prima facie case.  *Dr. Gertrude A. Barber Center, Inc. v. Peters Tp.*, 273 F. Supp. 2d 643, 652 (W.D. Pa. 2003) (citing *Lapid-Laurel v. Zoning Bd. of Adjustment*, 284 F.3d 442, 457 (3d Cir. 2002)).  Thereafter, the defendant bears the burden of showing that the requested accommodation was unreasonable.  *See Lapid-Laurel*, 284 F.3d at 459.

Here, the DCA disputes that Plaintiffs have alleged any facts that establish a causal nexus necessary for a reasonable accommodation claim.  In *Lapid-Laurel*, the Third Circuit emphasized "that the plaintiff in an FHAA reasonable accommodations case must establish a nexus between the accommodations that he or she is requesting, and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." *Id.* at 459.  In other words, under Third Circuit law, a reasonable accommodation claim demands "a causal nexus between the requested accommodation and the requested accommodation's necessity for providing handicapped individuals an equal opportunity to use and enjoy housing."  *Bell v. Tower Mgmt. Serv., L.P.*, Civil Action No. 07-CV-5305, 2008 U.S. Dist. LEXIS 53514, at *19 (D.N.J. July 15, 2008) (quoting *Lapid-Laurel*, 248 F.3d at 459, 460) (internal quotations and citations omitted).  In terms of what constitutes an "equal opportunity" under the FHA, the Third Circuit has approvingly cited the Sixth Circuit's finding that the FAA defines "equal opportunity" as providing "handicapped individuals the right to choose to live in single-family neighborhoods, for that right serves to end the exclusion of handicapped individuals from the American mainstream."  *Lapid-Laurel*, 248 F.3d at 459–60 (quoting *Smith & Lee Associates, Inc. v. City of*

*Taylor*, 102 F.3d 781 (6th Cir. 1996)); *see also McKivitz v. Twp. of Stowe*, 769 F. Supp. 2d 803,

825–26 (W.D. Pa. 2010); *Bryant Woods Inn, Inc. v. Howard County*, 911 F. Supp. 918, 946 (D.

Md. 1996) ("The Act prohibits local governments from applying land use regulations in a

manner that will exclude people with disabilities entirely from zoning neighborhoods,

particularly residential neighborhoods, or that will give disabled people less opportunity to live

in certain neighborhoods than people without disabilities."), *aff'd* 124 F.3d 597 (4th Cir. 1997).

To be "necessary," a plaintiff must demonstrate a direct link between the requested

accommodation "and the 'equal opportunity' to be provided to the handicapped person. . . . And

if the proposed accommodation provides no direct amelioration of a disability's effect, it cannot

be said to be necessary." *Lapid-Laurel*, 248 F.3d at 460 (quoting *Bryant Woods Inn, Inc. v.*

*Howard County*, 124 F.3d 597, 604 (4th Cir. 1997)).

      Here, Plaintiffs' reasonable accommodation claim is based on their assertion that waiving

the licensing requirement under the Act was necessary to provide handicapped individuals with

an equal opportunity to live in the Serenity House and participate in its program. *See e.g.*, Am.

Compl. ¶ 110. Plaintiffs have alleged that the conduct of the DCA has resulted in the denial of

disabled persons being unable to live in residential zoning districts within New Jersey. *See id.* at

¶ 101, 103. Plaintiffs have asserted that the Serenity House operates as sort of a "step up" from

the Oxford House model, but a "step down" from a halfway house. *See* Certification of Susan

Sharpe ("Sharpe Cert.") Ex. A at 4. Plaintiffs felt that some recovering alcoholics and drug

addicts were "falling through the cracks" because they needed more support than the Oxford

House model provided. *Id.* The Serenity House serves these clients that require a higher level of

structure and assistance than they would otherwise receive at the Oxford House. *See id.* at 13.

In other words, Plaintiffs assert that there are features of the Serenity House that are necessary to

prevent certain recovering alcoholics and substance abusers from potentially failing at their

recovery.  Accordingly, the Serenity House is the only way that certain handicapped individuals

may live in single-family neighborhoods, and the DCA is "making single family housing

unavailable to persons recovering from drug and alcohol addiction."  Am. Compl. ¶ 103.

Assuming this is true, Plaintiffs have successfully alleged that their requested accommodation

"would serve a therapeutic purpose (and would therefore be necessary to ameliorate an effect of

the handicap)," and therefore have alleged a causal link between the disabilities addressed by the

facility and the accommodation.  *Lapid-Laurel*, 284 F.3d at 461 (citations omitted).

Accordingly, at this stage of proceedings, Plaintiffs have appropriately alleged a claim for failure

to accommodate, and the motion to dismiss on that ground is denied.

2.    <u>Intentional Discrimination Claim</u>

A plaintiff can establish a *prima facie* claim of housing discrimination under FHA by

showing that the challenged actions were motivated by intentional discrimination or that the

actions had a discriminatory effect on a protected class, regardless of motivation.  *Cmty. Svcs.,*

*Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005); *Doe v. City of Butler, Pa.*, 892

F.2d 315, 323 (3d Cir. 1989).  Plaintiffs appear to seek a violation of the FHA under the

intentional discrimination prong of the FHA, rather than the discriminatory effect.  A claim for

intentional discrimination under this prong of the FHA can be established "by showing that

discriminatory intent against a protected group was a motivating factor for the challenged

action."  *Eastampton Ctr. v. Twp. of Eastampton*, 155 F. Supp. 2d 102, 111 (D.N.J. 2001).

While it is not necessary that the discriminatory purpose is "malicious or invidious, nor need it

figure in 'solely, primarily, or even predominantly' into the motivation behind the challenged

action," a plaintiff must establish that "the protected characteristic played a role in the

defendant's decision to treat her differently." *Cmty. Servs.*, 421 F.3d at 177 (quotations and citations omitted).  When considering if discriminatory intent has been established, courts consider the following factors: "(i) discriminatory impact of the challenged practice or policy; (ii) the historical background of the challenged decision; (iii) the 'sequence of events leading up to the challenged decision;'(iv) departures from 'normal procedural sequences;' (v) departures from normal substantive criteria; and (vi) legislative or administrative history of the challenged decision." *Id.* (citing *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 142 n.22 (3d Cir 1977)).

In this case, Plaintiffs have alleged that the DCA's policy of refusing to exempt or accommodate non- "Oxford House-like" houses constitutes intentional discrimination. Specifically, Plaintiffs have alleged that the DCA refused to consider a waiver or exception to the requirements of the Act for the Serenity House, *see* Am. Compl. ¶¶ 50–85, and that the DCA is "imposing far more stringent fire, zoning, building, property maintenance and land use requirements on this group of disabled individuals living together than it imposes upon individuals living together who are related by blood or marriage or other groups of unrelated disabled persons." *Id.* at ¶ 102.  *See Bangerter v. Orem City Corp.,* 46 F.3d 1491, 1501 (10th Cir. 1995) (affirming that a complaint set forth a claim of intentional discrimination where it alleged that a protected group was subjected to explicitly different treatment).  Accordingly, at this stage of the proceedings, the Court finds that Plaintiffs have sufficiently alleged a plausible claim for intentional discrimination, and denies the DCA's motion to dismiss.

### 3.   Retaliation Claim

Finally, Plaintiffs bring a claim for retaliation in violation of 42 U.S.C. § 3617.  Section 3617 provides that:

> It shall be unlawful to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or

on account of his having aided or encourage any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605 or 3606 of this title.

42 U.S.C. § 3617.  Accordingly, to establish a claim for retaliation under the FHA, a plaintiff must establish that the defendant "interfered with" their rights under the FHA.  Typically, "the language 'interfere with' has been broadly applied," *Sporn v. Ocean Colony Condo. Ass'n*, 173 F. Supp. 2d 244, 252 (D.N.J. 2001) (quoting *Michigan Advocacy Serv. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994)), and has been interpreted as having the same scope of Section 3604(f) of the FHA. This means that retaliation claims can apply to "those who used some sort of 'potent force or duress,' but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus." *Babin*, 18 F.3d at 347.

The Court finds that Plaintiffs have put forward a plausible set of facts that the DCA violated § 3617 by interfering with the exercise and enjoyment of the Plaintiffs' right to fair housing.  Section 3617 is broadly interpreted, and applies to "less obvious, but equally illegal" acts done with discriminatory animus. *Babin*, 18 F.3d at 347. Here, Plaintiffs have alleged facts showing that the DCA "interfered with" their rights as handicapped individuals to live as a group in any residential zoning district in New Jersey, *see* Am. Compl. ¶ 101, and that the DCA had an apparent policy of refusing to exempt sobriety homes that did not fit the "Oxford House" model from licensing requirements under the Act.  *See id.* at ¶¶ 50–84.  At this stage of the proceedings, such allegations are sufficient for a claim of retaliation under 42 U.S.C. § 3617.  Accordingly, Defendant's motion to dismiss is denied.

IV.     **Conclusion**

For the reasons stated above, Defendant DCA's Motion to Dismiss is denied in part and granted in part.[7]  Plaintiffs' state law claims are dismissed with prejudice against the remaining Plaintiffs because this Court lacks subject-matter jurisdiction over them pursuant to the Eleventh Amendment.  At this stage of the proceedings, Plaintiffs have sufficiently set forth a plausible set of facts for their federal claims, and the DCA's motion to dismiss these claims is denied.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated:  November 26, 2014

---

[7] The DCA has also moved to dismiss Ole Hansen for lack of standing.  After considering the parties' arguments, the Court will deny, without prejudice, the DCA's motion at this stage of the proceedings.